tice. But I am unable to reach the conclusion that the stipulation in this case is calculated to work out the result. It seems to provide that the lessees, after a breach, shall remain liable for the rent precisely as before, excepting that they are to be credited with any sums actually received for the use of the premises. This brings the case, unfortunately, within the numerous decisions concerning rent, which, not accruing at once, cannot be estimated beforehand. The original lessees, therefore, would not be liable for a gross sum at any time, nor could we ascertain, with any certainty, what sums they will be entitled to have credit for during the remainder of the term. Proof rejected.

## Case No. 7,992.

### In re LAKE.

[3 Biss. 204; [1] 6 N. B. R. 542; 6 West Jur. 360; 4 Chi. Leg. News, 281.]

District Court, N. D. Illinois. May Term, 1872.

TRANSFER OF PROMISSORY NOTES — WHO TO TAKE NOTICE OF PROCEEDINGS — ADJUDICATION RELATES BACK, ETC. — PURCHASER RULED TO DELIVER WITH PROPER ASSIGNMENT.

1. The transfer of promissory notes by the payee during the pendency of bankruptcy proceedings against him upon which he was afterwards adjudged a bankrupt, and of an injunction restraining him from disposing of his property, vests no title in the purchaser, even though he had no actual notice of the bankruptcy proceedings.

2. All the world is bound to take notice of proceedings in bankruptcy, and the purchaser takes with constructive notice.

[Cited in Taylor v. Irwin, 20 Fed. 617.]

3. The adjudication of bankruptcy relates back to the time of filing the petition, and carries with it title to the assignee to all property and all interest in the property which the bankrupt had at that time; and the assignee can recover such notes from the purchasers.

[Cited in Taylor v. Irwin, 20 Fed. 617.]

4. This case is not within the rule that negotiable bills of exchange which have been stolen, cannot be recovered from a bona fide holder, and the court will in such circumstances rule him to deliver them to the assignee.

This was a petition by Wm. B. Dwight, the assignee of John J. Lake, to compel the respondents, Charles Commerford and J. W. Lawrence, to deliver to him certain promissory notes alleged to belong to the bankrupt's estate. On the 24th of July, 1868, certain creditors of Lake filed their petition in this court, charging him with acts of bankruptcy, and the usual rule was entered requiring him to show cause why he should not be adjudged a bankrupt. At the same time an injunction was issued restraining Lake from selling, incumbering, or otherwise disposing of his property, or any part thereof, until the further order of the court. Lake filed a denial of the acts of bankruptcy

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

charged, and demanded a jury trial, and the case stood at issue and for trial on this denial, and the injunction remained in full force on the 12th of October, 1868, on which day Lake, who resided in Livingston county, called on the respondents who were and are bankers residing and doing business at Morris, in Grundy county, and offered to sell them three promissory notes for the sum of five hundred dollars each, dated the 13th of July, 1868, made by one Charles G. Peters, payable to said Lake, and secured by a mortgage on a tract of land in Livingston county, which Lake had conveyed to Peters. Lake was a stranger to respondents, but he was accompanied by one Clarke who was well known to them, and in good financial credit. Lake being a stranger, respondents refused to buy the notes of him unless Clarke would guaranty the payment thereof. The negotiation finally resulted in respondents purchasing the notes for the sum of $1,200, Lake indorsing and Clarke guaranteeing them, and Lake assigning to respondents the mortgage by which the notes were secured. Upon the trial of the case made by the petition and denial, Lake was found guilty of the acts of bankruptcy, and adjudged a bankrupt by the court. An assignee was duly elected, and the estate of the bankrupt conveyed to him, and the assignee now files this petition.

King & Willard, for assignee.
S. W. & T. B. Harris, for respondents.

BLODGETT, District Judge. By the fourteenth section of the bankrupt act [of 1867 (14 Stat. 522)], all the property and rights and interest in property which the bankrupt had at the time of the filing of the petition pass to the assignee, and the title of the assignee relates back to the time of the filing of the petition.

The filing of the petition praying the adjudication in bankruptcy is notice to all the world, and all persons dealing with the person thus charged do so at their peril. No person can, by dealing with a debtor thus situated, acquire any title to his property as against his assignee in bankruptcy, if the proceeding ripens into a judgment of bankruptcy. In re Gregg [Case No. 5,796]; In re Vogel [Id. 16,983]; In re Wynne [Id. 18,117].

But it is contended that negotiable paper forms an exception to this rule, and that the bona fide purchaser of such paper will be protected, although a petition in bankruptcy may be pending against the seller of such paper; and the counsel for respondents have presented an exceedingly ingenious and plausible argument in support of this proposition, relying mainly upon a class of cases where it has been held that bank notes, bills of exchange, and promissory notes, even when stolen or obtained from the owners by actual fraud, could not be re-

covered, if they had passed to bona fide purchasers for value without notice. To my mind, however, the difficulty in applying this principle of law to the case before the court arises from the fact that the respondents cannot be said to be bona fide holders without notice. All the parties to the transaction were domiciled in this district, and the transaction took place within the district. The proceedings in bankruptcy were then pending, and the bankrupt, Lake, was then under an injunction from this court prohibiting him from selling or disposing of any of his property. The respondents are concluded by the notice thus given them by the records of this court, and it does not lie in their mouths to say they are innocent purchasers.

The rule relied upon by the attorneys for respondents arises from the policy of the law in favor of protecting commercial transactions in negotiable or commercial paper made in due course of business, without fraud and for value paid. But an equally inexorable rule requires that all persons shall be held to take notice of judicial proceedings pending in courts having general jurisdiction over them.

The decree will be that respondents be required to deliver the notes in question to Lake's assignee within ten days.

It was also urged that inasmuch as these notes bear Clarke's guaranty of payment to respondents, some order should be made enabling them to avail themselves of it; but as Clarke is not before the court, I think the most the court can do at present is to require the assignee to preserve the notes and guaranties thereon intact for a reasonable time at least, so that they may be used as evidence hereafter, if required in any proceedings by respondents against Clarke.

LAKE (BICKHAM v.). See Case No. 1,386.
LAKE (CORREY v.). See Case No. 3,253.

## Case No. 7,993.

### LAKE v. FITZGERALD.

[6 Fish. Pat. Cas. 420.] [1]

Circuit Court, S. D. Ohio. June, 1873.

PATENTS—INFRINGEMENT—"VAULT COVERS."

1. Patent to Thaddeus Hyatt for "improvement in vault-covers," reissued April 3, 1855, construed. The patent is one for a grating, with its apertures filled with glass, without any other limitations as to the size of the apertures than those which, without the filling, would cease wholly to perform the functions described in the patent.

2. The character of Hyatt's invention was such as to require a construction which, irrespective of the filling, would answer a practical purpose for a grating. The defendant's device would not answer this purpose.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

3. Had no light similar to defendant's been before in use, the court would consider whether a greater extension of mere size, beyond complainant's own literal limitations, could not, for his protection, be made. Such an interpretation would then have been possibly justifiable for the protection of the principle of a meritorious invention.

4. It is not important that the device should be inserted in detached or removable covers or gratings. The court would readily hold a sidewalk made of iron plates permanently, or a floor or deck containing complainant's inventions, an infringement. Its essence was not a removable cover or grate.

In equity. Final hearing on pleadings and proofs. Suit brought upon letters patent [No. 4,266] for "improvement in vault-covers," granted Thaddeus Hyatt, November 12, 1845; reissued to same April 3, 1855 [No. 303]; extended seven years from November 12, 1859, by the commissioner of patents; extended again for seven years from November 12, 1866, by act of congress [5 Stat. 117], and assigned to complainant August 9, 1866. Also upon letters patent [No. 68,332] for an "improvement in illuminating-roofs and roof-pavements," issued to complainant [Elizabeth A. Lake], as assignee of Thaddeus Hyatt, the inventor, August 27, 1867. The last-mentioned patent does not appear to have been urged at the hearing, or to have been considered by the court in its opinion, the issue having been upon the first patent. Defendant [Frederick Fitzgerald] admits in his answer that he is making, setting, and vending illuminating vault-covers, grating, and roofs, under and by virtue of letters patent granted him for "improved vault-covers," September 25, 1866, and letters patent granted him for an "improved vault-light," November 26, 1867, and alleges that all illuminated vault-covers, grating, roof, and roof-pavements made by him are in strict conformity with the above-recited letters patent.

The court delivered no written opinion. The following is the substance of its opinion, as orally expressed, reported and afterward approved by it.

Fisher & Duncan and Keller & Blake, for complainant.

James Moore, for defendant.

Before EMMONS, Circuit Judge, and SWING, District Judge.

EMMONS, Circuit Judge. When complainant's counsel concluded his argument upon the question of infringement, Judge EMMONS said that unless there were some other considerations not called to their attention, he thought further consideration of the case unnecessary. As to the second claim, he understood counsel not seriously to press it. He thought the first also was not infringed by the defendant. It had been rationally interpreted in argument, and he desired to make no modification of counsel's interpretation. He had rightly, in the opinion of the court, considered the patent as one for a grating, with its apertures filled with glass, with-